**ANTON/BAUER, INC., Plaintiff/Counterclaim Defendant/Third Party Defendant–Appellee,**

and

**Alex Desorbo, Third Party Defendant–Appellee,**

v.

**PAG, LTD., Defendant/Counterclaimant/Third Party Plaintiff–Appellant.**

No. 02–1487.

United States Court of Appeals, Federal Circuit.

May 21, 2003.

Rehearing and Rehearing En Banc Denied: June 27, 2003.

Allen D. Brufsky, Ferrell Schultz Carter Zumpano & Fertel, P.A., of Miami, FL, argued for plaintiff/counterclaim defendant/thirty party defendant-appellee.

Stephen R. Risley, Thomas Kayden, Horstemeyer & Risley, L.L.P., of Atlanta, GA, argued for defendant/counterclaimant/third party plaintiff-appellant. With

him on the brief were J. Scott Culpepper and Robert B. Dulaney III.

Before MAYER, Chief Judge, SCHALL and DYK, Circuit Judges.

SCHALL, Circuit Judge.

On April 10, 2001, Anton/Bauer, Inc. ("Anton/Bauer") filed suit against PAG, Ltd. ("PAG") in the United States District Court for the District of Connecticut, alleging infringement, pursuant to 35 U.S.C. § 271(b) & (c), of United States Patent No. 4,810,204 entitled "Battery Pack Connection" (the "'204 patent"). Integral to the combination claimed in the '204 patent are a male and a female plate. After filing suit, Anton/Bauer moved for a preliminary injunction enjoining PAG from making, offering to sell, and holding itself out as authorized to sell the accused device, the PAG L75 battery pack. On June 12, 2002, the district court granted the motion, enjoining PAG from advertising, marketing, and offering to sell its PAG L75 battery pack or any product that contains the male plate described in the '204 patent. *Anton/Bauer, Inc. v. PAG, Ltd.*, No. 3:01 CV 577(CFD), 2002 WL 1359673, at *9, 2002 U.S. Dist. LEXIS 11583, at *28 (D. Conn. June 13, 2002). PAG now appeals the district court's grant of the preliminary injunction to Anton/Bauer.[1]

We conclude that, notwithstanding a careful analysis of the facts, the district court erred as a matter of law when it held that Anton/Bauer had not granted purchasers of its female plate an implied license to practice the invention claimed in the '204 patent. Operating under an implied license, those purchasers could not, as a matter of law, directly infringe the '204 patent. Absent direct infringement, PAG could not be held to have induced infringement under 35 U.S.C. § 271(b) or

---

1. The third-party defendant-appellee, Alex De- Sorbo, is the president of Anton/Bauer.

to have contributed to infringement under 35 U.S.C. § 271(c). Consequently, the district court erred in its determination that Anton/Bauer would likely succeed in proving infringement and that it would suffer irreparable harm if an injunction were not granted. Under these circumstances, the district court abused its discretion in granting the preliminary injunction. We therefore reverse.

## BACKGROUND

### I.

Anton/Bauer manufactures and sells a wide variety of batteries and chargers used in video production. The batteries typically require a device that will allow them to be connected mechanically and electrically to a video camera or to a battery charger and then to be released from the camera or charger. Anton/Bauer created various devices that connect batteries to chargers and to video production devices, such as professional video cameras. In March of 1989, Anton/Bauer obtained the '204 patent. The invention claimed in the patent is directed to a battery pack connection that allows a battery pack to be "quickly and efficiently replaced upon discharge of the batteries." '204 patent, col. 1, ll. 15–16. Each claim in the '204 patent recites a combination of a female plate and a male plate, where the female plate contains a plurality of keyholes or slots and the male plate contains a plurality of projections that correspond to the female keyholes or slots. Each claim further requires a "releasable locking means." The claimed combination is formed when a female plate and a male plate are fitted together to form a mechanical and an electrical connection. Claim 1 of the '204 patent is representative and recites:

1. A releasable connection for a battery pack or the like comprising a relatively flat male plate and a relatively flat female plate,

said plates being adapted to be releasably locked together in connected position;

said female plate including a plurality of keyholes with each having an opening and a depending slot, and at least one elongated terminal,

said terminal and keyhole slots being elongate in the same direction;

said male plate including a plurality of spaced headed projections with there being one for each keyhole and with each projection having head and leg portions, and at least one elongated mating terminal;

said male plate being positioned abutting the female plate with the leg portions of the projections being located in the slots of the associated keyholes and with the one terminal within the mating terminal;

releasable locking means on said female plate for engaging at least one of the headed projections in at least one of said keyhole slots to lock said plates in connected position by preventing relative movement between said plates in the direction of said keyhole slots by maintaining the engagement of said locking means with said headed projection until said locking means is released; and

safety latch means on said female plate for preventing movement of said releasable locking means upon engagement of said locking means with said headed projection.

'204 patent, col. 11, ll. 28–57. Generally, the claimed connection joins a battery pack to a television camera, where the female plate is attached to the camera or other electrically operated device, such as a battery charger, and the male plate is attached to the housing of a battery pack within which an electrical battery or AC/DC power source is contained. No

claim in the '204 patent separately covers the male plate or the female plate.

## II.

Anton/Bauer manufactures and sells both female plates and battery packs containing male plates. Instead of selling the combination of female plate and male plate as claimed in the '204 patent, however, it sells its female plates directly to members of the portable television video camera industry. The female plates are, in turn, attached to commercial portable television video cameras manufactured by Sony, Philips, JVC, and other video camera manufacturers. The camera manufacturer then sells the camera, with the female plate incorporated, to the public. Anton/Bauer also sells female plates directly to end-users as an after-market product. Anton/Bauer's female plates are designed exclusively for use in the combination claimed in the '204 patent, and it is undisputed that their use in that combination is their sole use. It is also undisputed that when Anton/Bauer sells its female plate, it does not place any restrictions on the customer's use of the plate.

Anton/Bauer also manufactures and sells battery packs, which have housings that contain Anton/Bauer's male plates. Typically, the male and female plates are not sold together. Although they may, in some instances, be sold at the same time to the same purchaser, they are always sold as separate products.

The PAG L75 battery pack can also be used in combination with Anton/Bauer's female plates. The housing of the PAG L75 battery pack contains a male plate, which allows the battery pack to be connected to the Anton/Bauer female plate. PAG began selling its battery pack in the United States in April of 2000. PAG does not, however, make, use, or sell any female plate in the United States with a "releasable locking means on said female plate," a limitation of the '204 patent claims.

## III.

As noted above, Anton/Bauer filed suit in the district court alleging that PAG's sales of the PAG L75 battery pack induced infringement of Anton/Bauer's '204 patent and/or contributed to the infringement of the '204 patent by Anton/Bauer's customers. Concurrently, it moved for a preliminary injunction to bar PAG from making, offering to sell, and holding itself out as authorized to sell the accused device. For purposes of the preliminary injunction proceedings, the parties did not dispute the scope of the claims of the '204 patent. Neither was it disputed that the PAG L75 battery pack, when placed in combination with Anton/Bauer's female plate, meets all of the limitations of the claims of the '204 patent.

The district court granted Anton/Bauer's motion, holding that Anton/Bauer would likely succeed on the merits of its claims of induced infringement or contributory infringement. *Anton/Bauer*, 2002 WL 1359673, at *5, 2002 U.S. Dist. LEXIS 11583, at *20, *23. In so doing, the court rejected each of the defenses offered by PAG, including PAG's claim that Anton/Bauer had exhausted its patents rights; that Anton/Bauer had granted its customers an implied license to practice the claimed invention; and that Anton/Bauer's customers were engaging in permissible repair when they replaced the PAG L75 battery pack. *Id.*

The district court concluded that, in light of its likely success in proving infringement, Anton/Bauer would suffer irreparable harm absent a preliminary injunction. *Id.* at *26, 2002 WL 1359673, at *8. Finally, the court found that the balance of the hardships between the parties weighed in favor of granting an injunction and that PAG had not raised any public interest that would be adversely affected by the imposition of an injunction. *Id.* at

*27–28, 2002 WL 1359673, at *8. Consequently, the court enjoined PAG from advertising, marketing, and offering for sale its PAG L75 battery pack or any product that contains the male plate described in the '204 patent for the duration of the patent term. *Id.* at *28, 2002 WL 1359673, at *8. This appeal resulted. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## ANALYSIS

### I. Standard of Review

■ We review the decision of a district court granting or denying a preliminary injunction under the abuse of discretion standard. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350, 57 USPQ2d 1747, 1751 (Fed.Cir.2001). Under that standard, we determine whether the district court "made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Id.* Relevant to this case, the existence *vel non* of an implied license is a question of law that we review *de novo*. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed.Cir.1986).

### II. Preliminary Injunction

■ Injunctive relief in patent cases is authorized by 35 U.S.C. § 283. In ruling on a motion for a preliminary injunction, a court must consider four factors: (1) the moving party's reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) whether the balance of hardships tips in favor of the moving party; and (4) whether the public interest favors the grant of a preliminary injunction. *Amazon.com*, 239 F.3d at 1350, 57 USPQ2d at 1751. Under our jurisprudence, in order to obtain a preliminary injunction, the movant must establish at the very least both of the first two factors, i.e., a likelihood of success on the merits and irreparable harm. *Id.* With regard to the requirement of likelihood of success on the merits, the moving party must show, in light of the burdens that will inhere at trial, that (1) it will likely prove infringement and (2) any challenges to the validity and enforceability of its patent "lack substantial merit." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363, 57 USPQ2d 1647, 1649 (Fed. Cir.2001). At this stage of the proceedings, PAG does not challenge the validity or enforceability of the '204 patent.

### A. Likelihood of Success on the Merits of Infringement

■ We turn first to Anton/Bauer's likelihood of success on the merits of its infringement claims. The district court found that Anton/Bauer would likely succeed in proving inducement of infringement and contributory infringement by PAG and that Anton/Bauer would likely prevail over PAG's defenses. *Anton/Bauer*, 2002 WL 1359673, at *5, 6, 2002 U.S. Dist. LEXIS 11583, at *20, *23.

■ Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In a case of alleged induced infringement, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed.Cir.1990). Anton/Bauer alleges that PAG actively induces Anton/Bauer's customers to infringe the '204 patent by selling the PAG L75 battery pack for use with Anton/Bauer's female plate and by urging end-users to

employ the battery pack with Anton/Bauer's female plate. Anton/Bauer alleges that end-users of PAG's L75 battery pack infringe the '204 patent when they use the battery pack together with Anton/Bauer's female plates, thereby making the combination claimed in the '204 patent.

Under 35 U.S.C. § 271(c):

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Anton/Bauer alleges that PAG contributes to the infringement of Anton/Bauer's '204 patent by selling the non-staple PAG L75 battery pack, which it argues is not suitable for any substantial noninfringing uses.

In order to succeed on its claims of inducement of infringement and contributory infringement, Anton/Bauer must prove that its own customers directly infringe the '204 patent when they use PAG's accused PAG L75 battery pack in combination with its female plate. *See Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n. 4, 37 USPQ2d 1169, 1177 n. 4 (Fed.Cir.1995) ("Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement."). Accordingly, we must determine whether Anton/Bauer's customers directly infringe the '204 patent.

A determination of infringement is a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted. [Second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (*en banc*) (citations omitted). PAG does not dispute the scope of the '204 patent's claims; neither does it dispute that its accused PAG L75 battery pack, when used in combination with Anton/Bauer's female plate, results in a connection that literally infringes the '204 patent. Rather, as it did before the district court, PAG argues that Anton/Bauer's customers do not directly infringe the '204 patent because they are protected by the exhaustion doctrine and by an implied license, and, if it applies, by the doctrine of permissible repair.[2] For purposes of this appeal, we assume, without deciding, that Anton/Bauer's customers create a combination encompassed by the '204 patent claims when they place PAG's accused PAG L75 battery pack in combination with Anton/Bauer's female plate.

■ The exhaustion doctrine is based upon the proposition that "[t]he unrestricted sale of a patented article, by or with the authority of the patentee, 'exhausts' the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold." *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105, 59 USPQ2d 1907, 1914 (Fed. Cir.2001). The Supreme Court enunciated this doctrine when it stated that "incident to the purchase of any article, whether patented or unpatented, is the right to use and sell it, and upon familiar principles the authorized sale of an article which is capa-

---

**2.** In light of our disposition of this case and in light of the fact that the parties both take the position that the doctrine of permissible re-

pair does not apply in this case, we do not address the doctrine.

ble of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold." *United States v. Univis Lens Co.*, 316 U.S. 241, 249, 62 S.Ct. 1088, 86 L.Ed. 1408, 53 USPQ 404, 407 (1942). In other words, sale of an unpatented article exhausts the seller's right to control the future sale and use of that article, but only certain circumstances exhaust the seller's patent right and result in an implied license. In *Univis*, which involved a patent covering lens blanks and the process of grinding and polishing them, the Court determined that the "[s]ale of a lens blank by the patentee or by his licensee is thus in itself both a complete transfer of ownership of the blank, which is within the protection of the patent law, and a license to practice the final stage of the patent procedure." *Id.*, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408, 53 USPQ at 407–08. The Court's statements in *Univis* demonstrate how closely related the exhaustion doctrine is to the grant of an implied license. Indeed, they suggest that an implied license stems from the exhaustion of a patent right.

■ At the same time, it is well settled that all or part of a patentee's right to exclude others from making, using, or selling a patented invention may be waived by granting a license, which may be express or implied. *Carborundum*, 72 F.3d at 878, 37 USPQ2d at 1172. A patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred. *Met–Coil*, 803 F.3d at 686, 231 USPQ at 476. An implied license is a defense to patent infringement. *Carborundum*, 72 F.3d at 878, 37 USPQ2d at 1172. Therefore, if Anton/Bauer's customers have an implied license to practice the patented combination, they cannot infringe the '204 patent, and PAG cannot be liable for either inducement of infringement or contributory infringement. *Id.*

The district court concluded that Anton/Bauer does not grant an implied license to its customers to use the '204 patent's combination. *Anton/Bauer*, 2002 WL 1359673, at *5, 2002 U.S. Dist. LEXIS 11583, at *23. The court based its decision on its finding that the PAG L75 battery pack is not a "replacement" for any component of the mechanical and electrical combination claimed in the '204 patent. *Id.* at *22, 2002 WL 1359673, at *6. The court also found that the circumstances do not indicate that an implied license is granted to Anton/Bauer's customers to practice the '204 patented combination with a male plate from a company other than the patentee. *Id.* While the court acknowledged that Anton/Bauer does not expressly deny a license, it concluded that Anton/Bauer's actions do not lead a consumer to believe that it may use a non-Anton/Bauer male plate to complete the patented combination. *Id.*

PAG argues that the district court improperly applied the implied license test laid out in *Met–Coil*. It claims that the court erred by requiring that the accused battery pack be a replacement for an element of the claimed combination and by requiring a showing of affirmative acts on the part of Anton/Bauer that would lead a customer to believe that an implied license had in fact been granted. PAG maintains that the requirements for an implied license are met in this case. Specifically, PAG argues that there are no noninfringing uses for Anton/Bauer's female plate and that the circumstances surrounding sales of the female plate make it clear that an implied license is granted to Anton/Bauer's customers. According to PAG, Anton/Bauer's sales of its female plate are authorized sales of an unpatented part with no express restriction. Pointing out that Anton/Bauer's female plate is useful only in completing the claimed combination, PAG contends that Anton/Bauer

exhausts its patent rights with respect to the plates it sells and grants its customers an implied license to practice the combination claimed in the '204 patent. Anton/Bauer responds that an implied license only arises when its female plate and male plate are sold together and that if a consumer buys the PAG L75 battery pack first and then buys a female plate, an implied license does not arise. Anton/Bauer also argues that the patent right cannot be exhausted before the end of the useful life of the components in the combination.

The sale of the unpatented female plate by Anton/Bauer is a complete transfer of the ownership of the plate. In effect, the sale extinguishes Anton/Bauer's right to control the use of the plate, because the plate can only be used in the patented combination and the combination must be completed by the purchaser. "[W]here one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patent, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article." *Univis*, 316 U.S. at 251, 62 S.Ct. 1088, 86 L.Ed. 1408, 53 USPQ at 408.

We must determine whether there are noninfringing uses of the female plate sold by Anton/Bauer and whether circumstances surrounding sales of the plate suggest that a license is implied. *Carborundum*, 72 F.3d at 878, 37 USPQ2d at 1172. PAG and Anton/Bauer agree that there are no noninfringing uses of the female plate sold by Anton/Bauer. Thus, Anton/Bauer places on the market one component of a patented combination that has no other use than to complete the patent combination with a second unpatented component.

With regard to the circumstances of sale, sales of the female plate are authorized sales to Anton/Bauer's customers, and there is no evidence that Anton/Bauer places express restrictions on the use of the female plates it sells or that it requires that manufacturers to whom it sells female plates expressly restrict the grant of a license upon sale of the finished camera product that incorporates the plate. We hold that, by the unrestricted sale of the female plate, Anton/Bauer grants an implied license to its customers to employ the combination claimed in the '204 patent. Accordingly, there is no direct infringement to support a claim of either inducement of infringement or contributory infringement.

We think this case is controlled by *Met–Coil*. There, the patent at issue claimed an apparatus and a method for connecting sections of metal ducts with integral flanges. Met Coil made and sold roll-forming machines that its customers used to bend integral flanges in the ends of the metal ducts so as to practice the claimed invention. Met–Coil also sold special shaped corner pieces for use with the integral flanges. Met Coil sued a manufacturer who made and sold to Met–Coil's customers specially shaped corner pieces for use with the integral flanges. *Met–Coil*, 803 F.3d at 685, 231 USPQ at 475. The parties agreed that there were no noninfringing uses of the machine sold by Met–Coil. *Id.* at 686, 803 F.2d 684, 231 USPQ at 476. This court held that Met–Coil's unrestricted sales of the machines, useful only in performing the claimed process and producing the claimed apparatus, "plainly indicate that the grant of a license should be inferred." *Id.* at 687, 803 F.2d 684, 231 USPQ at 476. The circumstances present here are similar. Anton/Bauer's unrestricted sale of its female plate, useful only in performing the claimed combina-

tion, plainly indicates that the grant of a license to practice the invention should be inferred. If the original purchaser is a manufacturer, then the implied license is passed on to the customer when the customer buys the camera with the female plate from the manufacturer.[3]

Anton/Bauer relies on *Carborundum* for the proposition that an implied license only arises when the male plate being replaced has worn out or been broken. We do not think that *Carborundum* helps Anton/Bauer, however. In *Carborundum*, the patentee sold an unpatented pump, whose only use was in the patented combination. *Carborundum*, 72 F.3d at 879, 37 USPQ2d at 1173. We concluded that, under these circumstances, the patentee's customers were free to complete the patented combination with parts obtained from any source because the sale of the pump granted an implied license for the life of the pump. *Id.* ("[A]n implied license arising from sale of a component to be used in a patented combination extends only for the life of the component whose sale and purchase created the license."). Similarly, absent circumstances indicating otherwise, Anton/Bauer's sale of the female plate grants an implied license to practice the combination claimed in the '204 patent to its customers for the life of the plate. Anton/Bauer confuses the doctrine of implied license with the doctrine of permissible repair.[4] Anton/Bauer's assertion that its male plate will not become worn out during the life of the female plate and that PAG's accused PAG L75 battery

pack is not a replacement for any item of the patented combination is immaterial for the purposes of determining whether a license should be implied.

We also are not persuaded by Anton/Bauer's argument that an implied license does not arise if a consumer purchases the PAG L75 battery pack before the consumer obtains Anton/Bauer's female plate. Indisputably, no license is granted to use the patented combination upon purchase of the PAG L75 battery pack and no infringement by PAG occurs due to the sale. However, when a female plate is purchased from Anton/Bauer, the purchaser receives an implied license to practice the claimed invention for the life of the female plate, regardless of when a male plate is acquired. Moreover, the fact that Anton/Bauer sells the second half of the combination, i.e. the male plates, does not, without more, suggest that Anton/Bauer did not intend to grant an implied license. In sum, we conclude that Anton/Bauer's customers have an implied license to practice the patented combination during the life of the female plate purchased from Anton/Bauer. Accordingly, they do not directly infringe the '204 patent, a necessary predicate for Anton/Bauer to establish inducement of infringement and contributory infringement against PAG.

As in *Carborundum*, different facts may have led to a different result. *See id.* Anton/Bauer could have, if novel, claimed its female plate and male plate individually

---

**3.** We do not address the question of whether the grant of a license to practice a patented combination may be inferred from the sale of any part (no matter how minor) of the combination. Thus, for example, we leave for another day the question of whether if in *Met–Coil* the patentee had sold only the corner pieces and not the roll-forming machine, it would have been inferred that the purchaser of the corner pieces had been granted an

implied license to practice the claimed invention.

**4.** In any event, as stated by this court in *Husky Injection Molding Systems v. R & D Tool & Engineering Co.*, 291 F.3d 780, 787–88 (Fed.Cir.2002), the standard for permissible repair is not limited to parts that are worn out or broken, but instead extends to "readily replaceable" parts.

in the '204 patent in order to improve its protection of its invention. If the male component were patented, PAG would potentially be liable as a direct infringer by manufacturing the part itself, avoiding the question of infringement by the patentee's customers. Moreover, Anton/Bauer had the option of selling its female and male plates together as the patented combination in order to receive compensation for the invention claimed in the patent.

Finally, the determination that an implied license is present here does not, as Anton/Bauer argues, obviate the applicability of contributory infringement in every case. Rather, it merely limits a patentee's ability to assert contributory infringement where the patentee has chosen to sell part, but not all, of its patented combination. It is the involvement of the patentee in this case that saves PAG from being a contributory infringer. We therefore conclude that Anton/Bauer will not likely succeed on the merits of its claims of inducement of infringement or contributory infringement.

## B. *Irreparable Harm*

The district court largely based its determination that Anton/Bauer will suffer irreparable harm if PAG is allowed to market its PAG L75 battery pack on its finding of a likelihood of success on the merits. *Anton/Bauer,* 2002 WL 1359673, at *8, 2002 U.S. Dist. LEXIS 11583, at *26. The district court relied on the presumption of irreparable harm that a clear showing of likely success on the merits of the issues of infringement and validity of a patent creates. *See Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.,* 132 F.3d 701, 708, 45 USPQ2d 1033, 1037 (Fed.Cir.1997). In light of our determination that Anton/Bauer will not likely succeed on its infringement claim, the presumption of irreparable harm does not apply. We, therefore, conclude that Anton/Bauer has not demonstrated that it will be irreparably harmed.

## C. *Balance of the Hardships and Public Interest*

The district court found that the balance of the hardships favored Anton/Bauer and that PAG had not raised any public interest that would be adversely affected by the imposition of an injunction. *Anton/Bauer,* 2002 WL 1359673, at *8, 2002 U.S. Dist. LEXIS 11583, at *27–28. Again, the district court's determination was based on Anton/Bauer's likelihood of success in proving infringement. Taking into consideration our determination that the first two preliminary injunction factors are not present, we need not reach the issues of balance of the hardships and public interest. *Amazon.com,* 239 F.3d at 1350, 57 USPQ2d at 1751 ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm.").

## CONCLUSION

The district court erred in its application of the doctrine of implied license, resulting in an erroneous conclusion of a likelihood of success on the merits of infringement. Under these circumstances, the district court abused its discretion in granting a preliminary injunction. The decision of the court is therefore reversed.

REVERSED.