**Richard LOPES Plaintiff**

**v.**

**INTERNATIONAL RUBBER DISTRIBUTORS, INC., et al. Defendants**

**No. 1:03 CV 2036.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 5, 2004.

Wayne D. Porter, Jr. Esq., Harris Zimmerman, Esq., Michael J. Cronen, Esq., Rankin, Hill, Porter & Clark, Cleveland, OH, for Plaintiff.

Bruce W. McClain, Esq., Bay Village, OH, Jay R. Campbell, Esq., Todd R. Tucker, Esq., John J. Del Col, Esq., Renner, Otto, Boisselle & Sklar, Cleveland, OH, for Defendants.

*MEMORANDUM OF OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION*

WELLS, District Judge.

This case is before the Court on a motion for a preliminary injunction filed by plaintiff Richard Lopes, on 24 November 2003. (Docket # 15). Plaintiff also submitted three declarations in support of his motion. (Docket # 16, # 28, and # 32). Defendants International Rubber Distributors, Inc. and Ivan R. Vernon (collectively referred to as "IRD") filed their opposition brief on 12 December 2003. (Docket # 24). Defendants also submitted two supplemental declarations by Ivan Vernon. (Docket # 34 and # 35). Plaintiff filed his reply brief on 29 December 2003. (Docket # 29). This Court conducted a hearing on plaintiff's motion on 27 January 2004, with counsel and parties present.

For the reasons that follow, plaintiff's motion is granted as to his registered trademark, SPACE BALLS®, but denied as to his '853 patent.

## I. BACKGROUND

Plaintiff Richard Lopes is the owner of record and named inventor of a United States Patent, No. 5,317,853 ("the '853 patent"), covering his invention of an "expansion joint" for wooden cabinet doors. (Docket # 33, at ¶ 4). The '853 patent includes an independent Claim 1 and dependent Claims 2–5. Independent Claim 1 recites the following:

> An expansion joint in a wooden door having a frame surrounding a central panel comprising:
>
> said frame having a groove about the interior thereof,
>
> a tonque (sic) forming at least a portion of the edge of said panel and which extends into said groove for a distance that is smaller than the depth of said groove, portions of said tongue that are outside of said groove being proportioned for entry into said groove in the event of expansion of said panel, and
>
> a plurality of spheres of limitedly compressible resilient material disposed in said groove in spaced relation thereabout and being dimensioned to be partially compressed between said frame and panel during assembly of said door, whereby said spheres continue to engage said frame and panel during expansion and contraction thereof.

('853 patent, col. 4, II. 30–46). The two dependent claims, most relevant to this case, recite the following:

> 3. The expansion joint of claim 1 further defined by said spheres being formed of plastic or rubber and having a hardness in the range of 32–55 durometer.

5. The expansion joint of claim 1 wherein said groove has a width that is smaller than the diameter of said spheres when said spheres are in an uncompressed condition.

('853 patent, col. 4, II. 52–54 and 61–64).

While the '853 patent does not itself contain any claim solely directed to rubber balls, Mr. Lopes markets small thermoplastic spheres to cabinetmakers under a federally registered trademark, SPACE BALLS®, U.S. Trademark Registration No. 2,515,209. (Docket #33, at ¶¶ 4–5). The goods specified in this registration are "resilient, compressible, thermoplastic rubber in spherical form for use as a structural component of wood cabinet doors." (Docket #33, at ¶ 5).

The '853 patent and SPACE BALLS® product relate to the manufacture of "center panel cabinet doors," a type of door commonly found on home kitchen and bathroom cabinets. (Docket #33, at ¶ 6). These doors have a solid wood panel surrounded by a frame, comprised of horizontal frame pieces called "rails" and vertical pieces called "stiles." (Docket #33, at ¶ 6). The rails and stiles have an interior groove that holds the central panel in place. (Docket #33, at ¶ 6). As noted above, Mr. Lopes sells small thermoplastic spheres ("rubber balls") to cabinetmakers to make his expansion joint invention used in the construction of center panel cabinet doors. (Decl. of Lopes at ¶ 10–11). The rubber balls sold by Mr. Lopes have an approximate diameter of .260 inches which is slightly larger than the standard .250 inch door frame groove. (Decl. of Lopes

at ¶ 9). Mr. Lopes alleges that more than 75 million cabinet doors have been made incorporating his invention and that current annual sales of SPACE BALLS® exceed $1,000,000. (Decl. of Lopes at ¶ 11). Custom Service Hardware, located in Cedarburg, Wisconsin, and the Nevitt Cabinet Shop, located in Modesto, California are two of Mr. Lopes' SPACE BALLS® customers. (Decl. of Lopes at ¶ 14; Decl. of Nevitt at ¶ 2). Over the years, Custom Service Hardware has purchased 90 million SPACE BALLS® from Mr. Lopes and used them solely for cabinet door expansion joints. (Decl. of Allen at ¶ 3).

Defendant IRD is an importer and wholesale distributor of various rubber and plastic products. (Docket #33, at ¶ 6). In 2003, IRD began, for the first time, to sell a new product line which consisted of .250 or .260 inch diameter compressible and resilient rubber balls. (Docket #33, at ¶ 21; Hearing Tr. at 32).[1] In March 2003, after having learned of Custom Service Hardware through an internet search, Mr. Senthil Muruganantham, an IRD employee, telephoned Mike Allen of Custom Service Hardware and told him that IRD was selling "space balls" at a competitive price. (Allen Decl. at ¶ 4; Docket #33, at ¶¶ 12–13).[2] On or about 20 March 2003, IRD sent Mike Allen of Custom Service Hardware a written communication stating that IRD was "sending [him] the samples of our Space balls (5000#) along with our best possible quote" and shipped 5000 pieces to him. (Docket #33, at ¶ 14). IRD also sent Mr. Allen a written price quote offering Custom Service Hardware

---

1. The parties dispute the size of the rubber balls sold by IRD. Mr. Lopes measured IRD's rubber balls and determined that they have the same diameter as his .260 inch SPACE BALLS® product. (Docket #32). IRD contends, however, that it only sells rubber balls tooled to certain generic sizes and that the accused product in this case is tooled to a

.250 inch diameter. (Docket #35; Hearing Tr. at 44–45).

2. In the parties' joint statement of undisputed facts, Mr. Muruganantham is referred to as an employee but during the hearing there was more specific testimony that he was an unpaid student intern. (Hearing Tr. at 47).

"Rubber Spaceballs per Thousand" at $3.75. (Docket # 33, at ¶¶ 14–15). IRD's price quote was lower than Mr. Lopes' SPACE BALLS® product. (Decl. of Allen at ¶ 6). However, because the sample products that Custom Service Hardware received from IRD "were made of an inferior quality rubber and smelled like tires," Mr. Allen found the products unsuitable for home cabinet door construction and did not purchase any. (Decl. of Allen at ¶ 6).

When Mr. Lopes learned of IRD's quotation to Custom Service Hardware, Mr. Lopes directed his attorney to send IRD a cease-and-desist letter, dated 31 March 2003, identifying his patent and trademark registration. (Docket # 33, at ¶ 16). On 4 April 2003, Ivan Vernon, president of IRD, responded with a letter stating, in pertinent part, that:

> We appreciate receiving this notice, as we wish to make every effort to avoid any type of infringement.
> We wish to assure you and your client of our intent to respect this trademark. We will strictly avoid any future use of verbiage similar to your client's trademark, and take particular care in the use of the word "space" in connection with our product. We will make every effort to distinguish our products from those identified by the SpaceBall® registered trademark.

(Docket # 34, at ¶¶ 1–2, Ex. A).

Near the end of April 2003, Mr. Nevitt of the Nevitt Cabinet Shop contacted Mr. Vernon at IRD, apparently at the direction of Mr. Lopes, and inquired whether IRD sold "space balls." (Decl. of Nevitt at ¶ 5; Decl. of Vernon at ¶ 9); and *Lopes v.*

*International Rubber Distributors, Inc.,* No. CV–F–03–5741 REC/DLB (E.D.Ca. August 22, 2003) ("Eastern District of CA Order").[3] When asked whether IRD sold "space balls," Mr. Vernon responded that they did not; however, Mr. Vernon did explain that IRD sold generic rubber balls. While IRD admits that Mr. Nevitt stated that the rubber balls were to be used in the construction of cabinets, Mr. Nevitt did not disclose any details about the particular construction of the cabinets. (Vernon Decl. at ¶ 9). Eventually Mr. Nevitt purchased approximately 300,000 of IRD's rubber balls and constructed "approximately six doors" to test out the product. (Nevitt Dep. Tr. at 12–13; Decl. of Nevitt at ¶ 6; Decl. of Vernon at ¶ 9). Mr. Nevitt found that IRD's products smelled like tires and were made of an inferior quality rubber and never sold the doors constructed with IRD's product. (Nevitt Dep. Tr. at 12–13). To date, IRD has sold approximately $5,000 worth of its rubber balls with about half of that amount consisting of one sale to the Nevitt Cabinet Shop and the other half involving a sale to Rapid Start, a hardware distributor. (Docket # 33, at ¶ 22; Hearing Tr. at 49–50).[4]

On 30 June 2003, Mr. Lopes sued IRD, in Mr. Lopes' home district in the Eastern District of California, for, among other things, patent and trademark infringement, seeking various forms of relief including a preliminary injunction. (Eastern District of CA Order at 1–2). The Eastern District of California Court, on 25 August 2003, granted IRD's motion to dismiss for lack of personal jurisdiction. (Eastern District of CA Order at 1). Subsequently,

---

3. While there appears to be some lingering dispute regarding the circumstances under which Mr. Nevitt contacted IRD to try to purchase "space balls," Mr. Lopes has conceded that he asked Mr. Nevitt to contact IRD "to determine whether IRD was selling its Spaceballs ... and whether the expansion

joints made with IRD's product were the same as those covered by the '853 patent." (Eastern District of CA Order, at 13).

4. There is no evidence in the record regarding what, if anything, Rapid Start did with IRD's products.

on 1 October 2003, Mr. Lopes filed the instant case against defendants IRD and Ivan Vernon, raising the following six causes of action: 1) Patent Infringement; 2) Trademark Infringement; 3) False Designation of Origin; 4) Unfair Competition; 5) Interference with Prospective Business Advantage; and 6) Violations of Ohio's Deceptive Trade Practices Act. (Docket # 1). On 24 November 2003, Mr. Lopes filed a motion for preliminary injunction seeking to enjoin defendants from infringing his '853 patent and his SPACE BALLS® trademark. (Docket # 15).

## II. ANALYSIS AND CONCLUSIONS OF LAW

Plaintiff Mr. Lopes seeks a preliminary injunction to stop defendants' alleged patent and trademark infringement. While the basic requirements for a preliminary injunction in both contexts are relatively similar, the standards and case law for obtaining such an injunction have evolved differently for patent as opposed to trademark infringement. Accordingly, this Court analyzes the patent and trademark infringement issues separately.

### A. Patent Infringement

In his patent infringement claim, Mr. Lopes asserts that IRD has induced and/or contributorily infringed on Claims 1, 3, and 5 of his '853 patent by selling its rubber balls to the Nevitt Cabinet Shop. (Docket # 15, at 9–10).

#### 1. Standard

In patent cases, courts are expressly authorized to grant injunctions "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Be-

fore issuing a preliminary injunction, a court must consider the following four factors:

1. Reasonable likelihood of success on the merits.

2. Prospect of irreparable harm.

3. Balance of hardships in favor of injunction.

4. Impact of the injunction on the public interest.

*Jeneric/Pentron, Inc. v. Dillon Company, Inc.*, 205 F.3d 1377, 1380 (Fed.Cir.2000); *Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n. 12 (Fed.Cir.1988).[5] No one factor is dispositive as each must be weighed and measured against the others. *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 680 (Fed.Cir.1990). This Court's decision regarding a preliminary injunction for patent infringement rests upon a balancing of these factors.

#### 2. Analysis

##### a. Reasonable likelihood of success on the merits

In a patent infringement case, reasonable likelihood of success requires evidence "on both validity and infringement." *Hybritech*, 849 F.2d at 1451; *Lubrizol v. Exxon Corp.*, 696 F.Supp. 302, 319 (N.D.Ohio 1988). Mr. Lopes bears the burden of showing a reasonable likelihood that at trial he could prove infringement by a preponderance of the evidence. *Lubrizol*, 696 F.Supp. at 320. The burden of proving the invalidity of the '853 patent, however, rests with the defendant IRD. *Id.* at 319. While the parties briefly discussed issues related to validity in their respective briefs and at the hearing, the emphasis of their legal and factual analysis was on infringement. Based on the minimal evi-

**5.** The law of the Federal Circuit, and not the regional circuit court, generally governs the issuance of a preliminary injunction for pat-

ent infringement pursuant to 35 U.S.C. § 283. *Hybritech*, 849 F.2d at 1451 n. 12.

dence available to the Court at this stage in the proceedings, it sees no reason to question the validity of the '853 patent and therefore focuses its own analysis on infringement.

█ In this case, Mr. Lopes asserts claims for induced and contributory infringement of Claims 1, 3, and 5 of his '853 patent, in violation of 35 U.S.C. § 271(b) and (c).[6] To establish that IRD induced infringement, Mr. Lopes must demonstrate that its "actions induced infringing acts and that [it] knew or should have known [its] actions would induce actual infringement." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990); *see also Warner–Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1363 (Fed.Cir.2003). Accordingly, Mr. Lopes must show that there has been direct infringement, *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 n. 7 (Fed. Cir.1988), and that IRD "possessed specific intent to encourage" that infringement, *Manville Sales Corp.,* 917 F.2d at 553. The mere knowledge of the acts alleged to constitute direct infringement does not establish the requisite intent for liability under Section 271(b); rather proof of "actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Warner–Lambert Co.,* 316 F.3d at 1363.

█ As with induced infringement, a claim for contributory infringement cannot exist where there is no direct infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 340–342, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (holding that "if there is no direct infringement of a patent there can be no contributory infringement.") Moreover, contributory infringement only arises where an accused device "has no use except through practice of the patented method." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 441, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). In other words, a product with non-infringing uses is a staple article of commerce which cannot give rise to liability for contributory infringement. *Id.*

█ As direct infringement is a necessary element for a finding of both contributory infringement and inducement of infringement, the apparent absence of a direct infringer, in this case, makes it unlikely that Mr. Lopes will prevail on his claim. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed. Cir.1986); *Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1349 (Fed.Cir.2003). Here the only evidence of direct infringement relates to Mr. Nevitt's construction of six door panels using rubber balls purchased from IRD.[7] Even assuming that Mr. Nevitt was practicing the '853 patent,

**6.** Section 271 provides in pertinent part:

(b) Whoever actively induces infringement of a patent shall be liable as an infringer. (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-

infringing use, shall be liable as a contributory infringer.

**7.** A patent infringement case generally involves a two-step analysis: (1) the claims must be construed; and (2) the properly construed claims must be compared to the allegedly infringing device. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Because the construction of the '853 patent's claims is not disputed or really at issue in this motion, further discussion on claim construction is unnecessary at this time.

which he apparently admits (Decl. of Nevitt at ¶ 4 and 7; Nevitt Dep. Tr. at 8–9 and 12–13), it is still unlikely that direct infringement occurred. Direct infringement is the making, using, offering to sell or selling of a patented invention "without authority." 35 U.S.C. § 271(a). Because the evidence before the Court at this time suggests that Mr. Lopes asked Mr. Nevitt to purchase IRD's products and construct expansion joints covered by the '853 patent, Mr. Nevitt's actions were authorized and therefore non-infringing. Accordingly, IRD is unlikely to be held liable for inducing or contributing to the infringement of the '853 patent.[8]

██ The Court's conclusion that Mr. Lopes is unlikely to prevail on the merits is further bolstered by the evidence that IRD did not specifically intend to induce infringement and that the rubber balls at issue in this case may well be staple articles of commerce. Though the evidence is somewhat conflicting regarding Mr. Nevitt's transaction with IRD, Mr. Lopes has not presented sufficient evidence for this Court to conclude that IRD knowingly induced infringement. Even if Mr. Vernon knew that Mr. Nevitt was purchasing the rubber balls from IRD to infringe the '853 patent, a fact that remains in dispute, there is little evidence that IRD's actual intent was to cause such infringement. Mr. Lopes tries to establish this intent by combining IRD's solicitation of Custom Service Hardware, his subsequent cease-and-desist letter, and Mr. Vernon's apparent knowledge that Mr. Nevitt intended to use the rubber balls in cabinetmaking. While it is true that circumstantial evidence may suffice in proving the requisite intent of induced infringement, *Warner–Lambert Co.*, 316 F.3d at 1363, the evidence introduced by Mr. Lopes falls short of demonstrating that intent. This is especially true since IRD did not solicit Mr. Nevitt's business, did not advertise its product for the particular use described in the '853 patent, and did not suggest such a use to Mr. Nevitt.

There is also some evidence which suggests both that IRD's rubber balls are not even suitable for the infringing use and that its products are a staple article of commerce. It is undisputed that both Custom Service Hardware and the Nevitt Cabinet Shop found IRD's product to be not suitable for use in home cabinets. Moreover, while it is unclear whether IRD has specifically sold any .25 (or .26) inch rubber balls for any other use, it sells rubber balls tooled to several generic sizes including .25, .5, .75, 1.0, 1.25, 1.5, 1.75, 2.0, 2.5, and 3.0 and suggests several possible uses for these types of rubber balls. (Docket # 35). While evidence on the staple article issue is hardly definitive, it supports this Court's conclusion that Mr. Lopes is unlikely to prevail on his claim for contributory infringement.

---

8. In its reply brief and at oral argument, Mr. Lopes strenuously argued that an "actual act of direct infringement is not required for liability under Section 271(c)." (Docket # 29, at 7). Rather, he suggests that all that is necessary is "a showing that a purchaser from the alleged contributory infringer would infringe if he used his purchase." (Docket # 29, at 7) (quoting *Nordberg Mfg. Co. v. Jackson Vibrators, Inc.*, 153 U.S.P.Q 777, 783 n. 8 (N.D.ILL.1967)). *Nordberg* does not reach the broad conclusion suggested by Mr. Lopes as it merely suggests that the statute could be construed in such a fashion, but does not reach a definitive conclusion on that issue. 153 U.S.P.Q at 783, n. 8, 1967 WL 7708. Plaintiff's suggested construction is out-of-step with the case law on this point. In *Anton/Bauer, Inc.*, for instance, the Federal Circuit expressly held that if the plaintiff's customers have an implied license to practice the patented combination, they cannot infringe the patent and therefore the defendant "cannot be liable for either inducement of infringement or contributory infringement." 329 F.3d at 1350.

### b. *Irreparable harm*

■ In patent infringement cases, a party seeking a preliminary injunction must also establish that it will suffer irreparable harm if the preliminary injunction is not granted. Where validity and continuing infringement have been clearly established, immediate irreparable harm is presumed. *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir.1983); *see also Bio–Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1558 (Fed.Cir.1996). However, since Mr. Lopes has failed to clearly establish infringement, no such presumption will be afforded here.

■ Mr. Lopes argues that he will suffer irreparable harm without a preliminary injunction because he stands to lose a considerable amount of business from IRD's sale of the accused devices. Moreover, he suggests that IRD's sale of "an inferior knock-off product" will imperil his goodwill and business reputation. Mr. Lopes allegations of irreparable harm are conjectural at best. The record contains no evidence regarding Mr. Lopes' lost sales, if any, and IRD has actually only sold $5000 of its product to date. Even if Mr. Lopes proved lost sales from IRD's activities, he could be fully compensated by monetary damages. *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir.1990). Mr. Lopes' suggestion that, absent a preliminary injunction, his reputation and business goodwill will be harmed is similarly speculative. One could certainly argue that IRD's sale of an "inferior product" ill-suited for the construction of Mr. Lopes' patented expansion joints would actually serve to solidify his hold on the market. In any case, Mr. Lopes has

failed to establish irreparable harm from the alleged infringement.[9]

### c. *Balance of hardships*

■ A preliminary injunction is a drastic remedy, as its issuance can seriously harm those enjoined and its absence can be equally severe on a patentee's rights even if vindicated at trial. *Illinois Tool Works, Inc.*, 906 F.2d at 683 (Fed.Cir. 1990). As the Court must balance the hardships in light of its estimate of what is likely to happen at trial, it is important to consider the movant's showing of likelihood of success. *Id.* Mr. Lopes has not made a strong showing of success on the merits; thus, the balance of the hardships weighs in favor of IRD and against the issuance of the injunction.

Mr. Lopes argues that the equities tip in his favor because an injunction would only "prohibit defendants from continuing one of their business activities, while protecting Mr. Lopes' sole product line." (Docket # 15, at 13). However, since IRD has made very few sales and since its product is ill-suited for use in Mr. Lopes' patent, there is little reason to suspect that Mr. Lopes' business will be greatly harmed absent an injunction, despite the relative scales of their businesses. On the other hand, a preliminary injunction could potentially prevent IRD from selling its .250 or .260 rubber ball product for any purpose, expanding Mr. Lopes' patent rights beyond its original conception. On the whole, the balance of hardships tips slightly in IRD's favor.

### d. *Impact on the public interest*

■ In this case, the impact on the public interest is mixed and uncertain.

---

9. Mr. Lopes also suggests that if IRD is not enjoined others will be encouraged to engage in similar infringing activities. Besides being entirely speculative, this argument rests squarely on the likelihood that he will succeed on his patent infringement claim, which, as discussed above, is far from certain.

Though the public has an interest in protecting patent rights, it has an equal and co-existent interest in fostering legal competition and preventing monopolistic trade. Accordingly, this factor does not tend to weigh in either party's favor. *PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1567 (Fed.Cir.1996) (considering both factors and granting the injunction); *Illinois Tool Works, Inc.*, 906 F.2d at 683 (considering both factors and denying the injunction).

### 3. Summary

Because Mr. Lopes has not demonstrated a reasonable likelihood of success on the merits or irreparable harm and as the balance of hardships weighs slightly in IRD's favor, this Court declines to issue a preliminary injunction preventing IRD from selling its .250 or .260 inch rubber balls.

## B. Trademark Infringement

In his trademark infringement claim, Mr. Lopes argues that a preliminary injunction is both appropriate and necessary as a result of IRD's alleged infringement during its solicitation of sales from Custom Service Hardware. (Docket # 1 and 4).

### 1. Standard

█ Before issuing a preliminary injunction, a court must consider the following four factors:

1. Whether a movant has shown a strong or substantial likelihood or probability of success on the merits.
2. Whether the movant has shown irreparable injury.
3. Whether the preliminary injunction could harm others.

4. Whether the public interest would be served by issuing the preliminary injunction.

*Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977); *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985).[10] These considerations are "factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985). While the court must engage in this balancing test, "a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir.1982). With these standards in mind, this Court must determine whether Mr. Lopes has demonstrated the need for a preliminary injunction with respect to his trademark infringement claim.

### 2. Analysis

#### a. Likelihood of success on the merits

█ Mr. Lopes claims IRD has violated Section 32 of the Lanham Act by infringing on his federally registered trademark. The Lanham act prohibits, without the consent of the registrant,

> the use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). In resolving claims for trademark infringement, the critical issue is whether "the simultaneous use of two trademarks is likely to cause confusion." *Jet, Inc. v. Sewage Aeration*

---

10. Unlike with patent infringement, district courts should apply the law of their regional circuit in ruling on motions for preliminary injunctions based on trademark infringement.

*Nitro Leisure Products, L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed.Cir.2003); *Frisch's Restaurant, Inc.*, 759 F.2d at 1263.

*Systems,* 165 F.3d 419, 421 (6th Cir.1999). This "likelihood of confusion" test involves the application of the following factors: 1) strength of the plaintiff's mark, 2) relatedness of the goods or services, 3) similarity of the marks, 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) the defendant's intent in selecting its mark, and 8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.1982). These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). The ultimate question remains whether relevant consumers are "likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores v. Big Daddy's Family Music Center,* 109 F.3d 275, 280 (6th Cir.1997).

Pursuant to 15 U.S.C. § 1115(a), Mr. Lopes' registration of his SPACE BALLS® mark on the principal register is "prima facie evidence of the validity of the registered mark and . . . of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." This does not, however, preclude IRD from proving any legal or equitable defense demonstrating the absence of infringement. 15 U.S.C. § 1115(a). The goods specified in Mr. Lopes' registration are "resilient, compressible, thermoplastic rubber in spherical form for use as a structural component of wood cabinet doors." (Trademark No. 2,515,209).

In this case, IRD admits to using Lopes' registered trademark in conjunction with the marketing of its compressible and resilient rubber balls to Custom Services Hardware. (Docket # 24, at 15). Though it does not contest its use of the trademark, the similarity of the marks, or the relatedness of the goods, IRD does proffer arguments related to the strength of the mark. When assessing a mark's strength, a court will place it into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary. *Daddy's Junky Music Stores,* 109 F.3d at 280. Though these categories are not perfectly discrete, they constitute a spectrum of increasing strength, with fanciful or arbitrary marks being the most distinctive. *Id.; see also Two Pesos v. Taco Cabana,* 505 U.S. 763, 768–69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). As a trademark increases in distinctiveness, consumers are more likely to be confused and so the mark is more deserving of protection. *PACCAR Inc. v. TeleScan Technologies, L.L.C.,* 319 F.3d 243, 251 (6th Cir.2003). Moreover, once a mark has been registered for five years without being successfully contested, the "mark must be considered strong and worthy of full protection." *Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 600 (6th Cir.1991). While the mark in this case has apparently not yet been contested, it has only been registered since 4 December 2001, a little over two years.

Mr. Lopes argues that his mark is inherently strong as it is arbitrary or "suggestive of the recited thermoplastic spheres." (Docket # 15, at 15). A mark is arbitrary when it is an everyday name or thing mismatched to the product it represents, such as "Camel" for cigarettes or "Apple" for computers. *Daddy's Junky Music Stores,* 109 F.3d at 280–81.[11] A suggestive mark "suggests . . . an ingredi-

---

11. As opposed to a fanciful mark, an arbitrary mark is distinctive only within its product market and entitled to little or no protection outside of that area. *Kellogg Co. v. Toucan Golf, Inc.,* 337 F.3d 616, 626 (6th Cir.2003).

ent or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir.1999) (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984)). IRD, on the other hand, suggests that the SPACE BALLS® mark is "possibly descriptive" and therefore should be afforded less protection. (Docket # 24, at 15). IRD does not, however, specify which type of descriptive mark it is referring to. It is true that a generic or "common descriptive" term can never function as a trademark. *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir.2002). A term that is "merely descriptive," on the other hand, may be used as a trademark if it has acquired a secondary meaning. *Id.* A term is merely descriptive as opposed to generic if it is used to identify a characteristic of the thing. *Id.* at 404 n. 7. While the limited evidence before the Court precludes a final determination regarding the strength of the mark, the available evidence does suggest that, at the very least, Mr. Lopes' SPACE BALLS® mark is "merely descriptive." The mark has acquired a secondary meaning as it appears to be used and understood by cabinetmakers to identify the particular characteristics of the product—a resilient, compressible, rubber ball for use in the construction of cabinet doors. Accordingly, the mark should be afforded protection.

■ The products sold by IRD and Mr. Lopes are similar enough that consumers are very likely to be confused if the defendants were to continue to market their rubber balls as "space balls," despite the remaining uncertainty with respect to the strength of the mark. Moreover, there is some evidence in this case to suggest that IRD adopted the mark after locating it on the internet and subsequently used it to target Custom Service Hardware, one of the trademark registrant's customers. (Decl. of Vernon at ¶ 5; Decl. of Allen at ¶ 4). This suggestion of intentional copying supports an inference that IRD intended to confuse Mr. Lopes' customers and bolsters the Court's finding that Mr. Lopes is substantially likely to prevail on the merits of his trademark infringement claim.

### b. *Irreparable Harm*

■ In infringement actions, the general rule is that "an irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Wynn Oil Co.*, 943 F.2d at 608. IRD argues, however, that there is no irreparable harm in this case because IRD only used the trademark during the course of one transaction and because it has voluntarily agreed not to use the trademark in the future. (Docket # 24, at 15). While there is no evidence that IRD has continued to use the trademark, such voluntary cessation does not prevent the issuance of a preliminary injunction. This is especially true where, as here, the accused infringer threatens to contest the validity of the mark during the course of this litigation. In this case, injunctive relief is appropriate to prevent the irreparable harm from occurring while the validity of the mark is litigated.

### c. *Harm to others and public interest*

■ Both of these factors weigh in favor of granting a preliminary injunction to protect Mr. Lopes' trademark. If IRD truly intends not to infringe Mr. Lopes' trademark, the preliminary injunction does not harm them or impede their business. The preliminary injunction does, however, maintain the status quo and gives substantial protection to Mr. Lopes' trademark during the course of this litigation. In addition, the issuance of an injunction in

this case serves the public interest of guarding "the public from being deceived into purchasing an infringing unwanted product." *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328 (6th Cir.1973). By preventing IRD from using Mr. Lopes' distinctive trademark, consumers will be better positioned to distinguish between relatively similar products and make informed choices.

### 3. Summary

Because Mr. Lopes has demonstrated a substantial likelihood of prevailing on the merits of his trademark infringement claim, has shown the existence of irreparable harm from IRD's use of the mark, and has established that the issuance of the injunction will not harm IRD and will foster the public interest, this Court will issue a preliminary injunction preventing IRD from using Mr. Lopes' federally registered trademark, SPACE BALLS®.

### III. CONCLUSION

Having applied the legal standards for a preliminary injunction to the facts of this case, this Court finds that they weigh against the issuance of a preliminary injunction for patent infringement but in favor of a preliminary injunction for trademark infringement. Accordingly, plaintiff's motion for a preliminary injunction is denied as to his patent infringement claim but granted with respect to his trademark infringement claim.

IT IS THEREFORE ORDERED that defendants are preliminarily enjoined from using plaintiff's federally registered SPACE BALLS® trademark (U.S. Trademark No. 2,515,209) or any confusingly similar variation thereof.

IT IS SO ORDERED.